UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| PRECIOUS JOHNSON ) <br> 1695 Paige Rd Apt. 205 ) <br> Lafayette, IN 47909 ) <br> ) <br> and ) <br> ) <br> ) <br> NICHOLAS GREATHOUSE ) <br> 4278 Franklin Street ) <br> Bellaire, OH 43906 ) <br> ) <br> *On Behalf of Themselves and All Others* ) <br> *Similarly Situated,* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WRIGHT TRAFFIC CONTROL, INC. ) <br> 561 Wallace Run Rd. ) <br> Beaver Falls, PA 15010 ) <br> ) <br> and ) <br> ) <br> W.D. WRIGHT CONTRACTING, INC. ) <br> 1200 Sharon Road, Suite 1 ) <br> Beaver, PA 15009 ) <br> ) <br> Defendants. ) | Case No.  2:23-CV-1500 <br><br> Judge <br><br> **COMPLAINT** <br><br> (Jury Demand Endorsed Herein) |

Now comes Plaintiffs, Precious Johnson ("Plaintiff Johnson") and Nicholas Greathouse ("Plaintiff Greathouse") (together referred to as "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Defendants Wright Traffic Control, Inc. ("Defendant WTC") and W.D. Wright Contracting, Inc. ("Defendant W.D. Wright") (together referred to as "Defendants") state and allege the following:

## INTRODUCTION

1. This is a "collective action" instituted by Plaintiffs as a result of Defendants' practices and policies of not paying its hourly, non-exempt employees, including Plaintiffs and other similarly situated employees, wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 each workweek, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. This is also a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Indiana Wage Payment Act, I.C. § 22-2-5-1, *et seq.* ("IWPA") and the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ("PMWA").

## JURISDICTION AND VENUE

3. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

5. The Court has personal jurisdiction over Defendants, as Defendants' principal place of business is in Pennsylvania.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the principal place of business of both Defendants is located in Beaver County, Pennsylvania, Defendants conducts business throughout this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

7.      At all material times, Plaintiff Johnson is and was a citizen of the United States and a resident of Layfette, Indiana.

8.      At all material times, Plaintiff Johnson was an employee within the meaning of 29 U.S.C. § 203(e).

9.      At all material times, Plaintiff Johnson was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

10.     At all material times, Plaintiff Greathouse is and was a citizen of the United States and a resident of Belmont County, Ohio, and worked for Defendants in Pennsylvania.

11.     At all material times, Plaintiff Greathouse was an employee within the meaning of 29 U.S.C. § 203(e) and 43 P.S. § 333.103.

12.     At all material times, Plaintiff Greathouse was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

13.     At all material times, Defendant WTC was a corporation for profit headquartered in Beaver County, Pennsylvania. Defendant WTC's registered principal address is 561 Wallace Run Road, Beaver Falls, PA 15010.

14.     At all material times, Defendant W.D. Wright was a corporation for profit headquartered in Beaver County, Pennsylvania. Defendant W.D. Wright's registered principal address is 1200 Sharon Road, Suite 1, Bever, PA 15009.

15.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and have both enjoyed yearly gross revenue in excess of $500,000.

16. At all material times, Defendant WTC and Defendant W.D Wright have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), performing related activities through unified operation and common control for a common business purpose, and part of their unified business model is the wage violations alleged in this Complaint.

17. At all material times, Defendant WTC and Defendant W.D Wright have been joint employers.

18. Defendants operate with a high degree of interrelated and unified operations and share common ownership and leadership.

19. Upon information and belief, Defendants share equipment, ownership, management (including, upon information and belief, corporate officers), and collectively assert control over their employees.

20. Defendants perform related activities through unified operation and common control for a common business purpose, and they share common labor policies and practices, including the policies and practices complained of herein.

21. Plaintiff Johnson's written consent to this action is attached hereto as Exhibit A.

22. Plaintiff Greathouse's written consent to this action is attached hereto as Exhibit B.

23. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

24. Defendants provides temporary work zone operations including traffic control activities and flagging at worksites in various locations across the United States.

25. Defendants employ traffic controllers, including traffic control technicians (flaggers) and traffic control supervisors, whose job duties include providing temporary traffic control services at worksites, such as one-lane flagging operations or multi-lane road closures.

26. Defendants also employ traffic controllers to whom it assigns company vehicles (hereinafter "traffic controllers/drivers") who, in addition to providing temporary traffic control services at worksites, are also required to transport company vehicles (non-commercial vehicles weighing less than 10,000 pounds), company owned equipment, and other employees (traffic controllers who are not also drivers) to and from the worksites.

27. At all material times, Defendants owned and controlled the company vehicles they assigned to the traffic controllers/drivers.

28. At all material times, Defendants prohibited employees from driving personal vehicles to the worksites.

29. From approximately September 8, 2022 through approximately February 21, 2023, Plaintiff Johnson was employed by Defendants as a traffic controller/driver out of Defendants' Indianapolis, Indiana office.

30. From approximately 2019 to approximately July or August 2021, Plaintiff Greathouse was employed by Defendants as a traffic controller/driver out of Defendants' Washington, Pennsylvania office.

31. As traffic controllers/driver, Plaintiffs were assigned a Wright traffic control vehicle, and were required by Defendants to transport said vehicle, equipment owned by Defendants (flags, cones, signs, vests, and hardhats), and their assigned travel partners/co-workers (who were also Defendants' employees) to and from worksites.

32. Other similarly situated employees were employed by Defendants as traffic controllers/drivers and were required to transport Defendants' company vehicles, equipment, and other employees to and from worksites.

33. Specifically, prior to arriving to a worksite each day, Plaintiffs and other traffic controllers/drivers were required to drive a company vehicle to the homes of their assigned partners/co-workers and/or a designated meeting location, where they would pick-up their assigned partners/co-workers, and then transport the co-workers (along with Defendants' vehicle and equipment) to the worksites.

34. Likewise, after leaving the worksite at the end of their shifts, Plaintiffs and other traffic controllers/drivers were required by Defendants to transport their assigned partners/co-workers to the co-workers' home and/or the designated meeting location where they would drop-off their co-workers before driving the company vehicle home.

35. Plaintiffs and other similarly situated traffic controllers/drivers were classified as non-exempt.

36. Plaintiffs and other similarly situated traffic controllers/drivers were paid an hourly wage.

37. Plaintiffs and other similarly situated traffic controllers/drivers regularly worked more than 40 hours per week.

**(Failure to Pay for all Hours Worked)**

38. Defendants paid Plaintiffs and other similarly situated employees only for work performed between the time they arrived at and left the worksite.

39. Defendants did not pay Plaintiffs and other similarly situated traffic controllers/drivers for the work they performed prior to arriving to the worksite, including picking

up co-workers from co-workers' homes and/or designated meeting locations, and transporting the co-workers, as well as Defendants' company vehicles and equipment, to the worksite.

40. Defendants also did not pay Plaintiffs and other similarly situated employees for work performed after leaving the worksite, including transporting co-workers, along with Defendants' company vehicles and equipment, to the co-workers' homes and/or designated meeting locations to drop the co-workers off.

41. Defendants required Plaintiffs and other similarly situated traffic controllers/drivers to perform this unpaid work each day.

42. The time spent picking up, dropping off, and transporting other employees of Defendants to and from the worksites added several hours each workweek. In fact, Plaintiffs and other similarly situated traffic controllers/drivers frequently spent one (1) to three (3) hours or more in a single day transporting other employees of Defendants to and from the worksite.

43. Having to pick up, drop off, and transport other employees added additional drive time, and took Plaintiffs and others similarly situated beyond their normal commute, when compared to a direct commute to a worksite.

44. The unpaid work constituted Plaintiffs' and other similarly situated traffic controller/drivers principal activities, and was an integral, intrinsic, and indispensable parts of their other principal activities, was required by Defendants, and was performed for Defendants' benefit. Defendants' traffic control operations could not be accomplished without transporting the necessary employees.

45. The time spent performing this unpaid work is/was compensable under the continuous workday rule because it was a principal activity that occurred between the

7

commencement of the first principal activity and the completion of the last principal activity each workday of Plaintiffs and others similarly situated.

46. The amount of time spent transporting co-workers, and the amount of unpaid wages, including overtime, is more than *de minimis*.

**(Failure to Pay Overtime Compensation)**

47. Plaintiffs and other similarly situated traffic controllers/drivers regularly worked more than 40 hours each workweek.

48. As a result of Defendants' practices and policies, Plaintiffs and other similarly situated employees were not compensated for all of the time they worked, including all of the overtime hours they worked in excess of 40 each workweek.

**(Failure to Keep Accurate Records)**

49. Upon information and belief, Defendants failed to make, keep, and preserve accurate records of all of the unpaid work performed by Plaintiffs and other similarly situated traffic controllers/drivers employed by Defendants.

**(Defendants Willfully Violated the FLSA)**

50. Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

51. Pursuant to 29 U.S.C. §216(b), Plaintiffs bring Count One of this action on their own behalf, and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct.

52. The class which Plaintiffs seeks to represent and for whom Plaintiffs seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are members, is composed of and defined as follows:

> All former and current traffic controllers/drivers employed by Defendants during the three (3) year period prior to the filing of this Complaint. ("the FLSA Collective Class")

53. At this time, Plaintiffs are unable to state the exact size of the potential collective, but upon information and belief, aver that it consists of at least several hundreds of persons.

54. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages earned, including overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

55. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiffs are representatives of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

56. These similarly situated employees are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

## INDIANA CLASS ACTION ALLEGATIONS

57. Plaintiff Johnson brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other members of the class ("the Indiana Class") defined as:

> All former and current traffic controllers/drivers employed by Defendants in the State of Indiana during the three (3) year period prior to the filing of this Complaint.

58. The Indiana Class is so numerous that joinder of all class members is impracticable. Upon information and belief, the Indiana Class consists of at least 100 individuals.

59. There are questions of law or fact common to the Indiana Class, including but not limited to the following:

> (a) whether Defendants failed to pay overtime compensation to their flaggers/drivers for hours worked in excess of 40 each workweek; and
>
> (b) what amount of monetary relief will compensate Plaintiff Johnson and other members of the Indiana Class for Defendants' violations of the IWPA, I.C. § 22-2-5-1, *et seq.*

60. The claims of Plaintiff Johnson are typical of the claims of other members of the Indiana Class. Plaintiff' Johnson's claims arise out of the same uniform course of conduct by Defendants and are based on the same legal theories as the claims of the other Indiana Class members.

61. Plaintiff Johnson will fairly and adequately protect the interests of the Indiana Class. Her interests are not antagonistic to, but rather are in unison with, the interests of the other Indiana Class members. Plaintiffs' counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Indiana Class in this case.

62. The questions of law or fact that are common to the Indiana Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Indiana Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

63. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Indiana Class members to pursue their claims

individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Indiana Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## PENNSLYVANIA CLASS ACTION ALLEGATIONS

64. Plaintiff Greathouse brings Count Three of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all other members of the class ("the Pennsylvania Class") defined as:

> All former and current traffic controllers/drivers employed by Defendants in the State of Pennsylvania during the three (3) year period prior to the filing of this Complaint.

65. The Pennsylvania Class is so numerous that joinder of all class members is impracticable. Upon information and belief, the Pennsylvania Class consists of at least 100 individuals.

66. There are questions of law or fact common to the Pennsylvania Class, including but not limited to the following:

> (c) whether Defendants failed to pay overtime compensation to their flaggers/drivers for hours worked in excess of 40 each workweek; and
>
> (d) what amount of monetary relief will compensate Plaintiff Greathouse and other members of the Pennsylvania Class for Defendants' violations of the PMWA , 43 P.S. § 333.101, *et seq.*

67. The claims of Plaintiff Greathouse are typical of the claims of other members of the Pennsylvania Class. Plaintiff Greathouse's claims arise out of the same uniform course of conduct by Defendants and are based on the same legal theories as the claims of the other Pennsylvania Class members.

68. Plaintiff Greathouse will fairly and adequately protect the interests of the Pennsylvania Class. His interests are not antagonistic to, but rather are in unison with, the interests of the other Pennsylvania Class members. Plaintiffs' counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Pennsylvania Class in this case.

69. The questions of law or fact that are common to the Pennsylvania Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Pennsylvania Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

70. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Pennsylvania Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Pennsylvania Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE

**(Fair Labor Standards Act Violations)**

71. Plaintiffs, on behalf of themselves and the FLSA Collective Class, reallege and incorporate by reference the foregoing allegations as if fully rewritten herein.

72. Defendants' practice and policy of not paying Plaintiffs and other similarly situated employees for work performed before arriving to worksites and after leaving worksites violates the FLSA, 29 U.S.C. § 207, 29 C.F.R.§ 785.24.

73. Defendants' practice and policy of not paying Plaintiffs and other similarly situated employees for all work performed each day violates the FLSA, 29 U.S.C. § 207, 29 C.F.R. § 785.24.

74. Defendants' practices and policies of not paying Plaintiffs and others similarly situated for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, violates the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

75. Defendants' failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiffs and other similarly situated employees violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

76. Defendants' actions and/or omissions were not in good faith.

77. By engaging in the above-described practices and policies, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

78. As a result of Defendants' practices and policies, Plaintiffs and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO

### (Indiana Wage Payment Act Violations)

79. Plaintiff Johnson, on behalf of herself and the Indiana Class, realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

80. Defendants' practice and policy of not paying Plaintiff Johnson and other similarly situated employees for work performed before arriving to worksites and after leaving worksites violates the IWPA, I.C. § 22-2-5-1, *et seq*.

81.     Defendants' practices and policies of not paying Plaintiff Johnson and other similarly situated employees for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, violates the IWPA, I.C. § 22-2-5-1, *et seq.*

82.     Defendants' actions and/or omissions were not in good faith.

83.     By engaging in the above-described practices and policies, Defendants willfully, knowingly and/or recklessly violated the IWPA, I.C. § 22-2-5-1, *et seq.*

84.     As a result of Defendants' practices and policies, Plaintiff Johnson and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the IWPA.

## COUNT THREE

### (Pennsylvania Minimum Wage Act)

85.     Plaintiff Greathouse, on behalf of himself and the Pennsylvania Class, realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

86.     Defendants' practice and policy of not paying Plaintiff Greathouse and other similarly situated employees for work performed before arriving to worksites and after leaving worksites violates the PMWA, 43 P.S. § 333.101, *et seq.*

87.     Defendants' practices and policies of not paying Plaintiff Greathouse and other similarly situated employees for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek, violates the PMWA, 43 P.S. § 333.101, *et seq.*

88.     Defendants' actions and/or omissions were not in good faith.

89. By engaging in the above-described practices and policies, Defendants willfully, knowingly and/or recklessly violated the PMWA , 43 P.S. § 333.101, *et seq.*

90. As a result of Defendants' practices and policies, Plaintiff Greathouse and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the PMWA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

A. Issue an order permitting this litigation to proceed as a collective action;

B. Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

C. Issue an order certifying the Indiana Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

D. Issue an order certifying the Pennsylvania Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

E. Award Plaintiffs and the classes they represent actual damages for unpaid wages;

F. Award Plaintiffs and the classes they represent statutory liquidated damages in an amount to the unpaid wages found due to Plaintiffs and the classes under the FLSA, the IWPA, and the PMWA;

G. Award Plaintiffs and the classes they represent pre- and post-judgment interest at the statutory rate;

H. Award Plaintiffs and the class they represent attorneys' fees, costs, and disbursements; and

I.    Award Plaintiffs and the class they represent further and additional relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiffs hereby demands trial by jury as to all claims and issues so triable.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (Ohio 0092942)
(*will apply for admissions pro hac vice*)
Anthony J. Lazzaro (Ohio 0077962)
(*will apply for admissions pro hac vice*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com

Attorneys for Plaintiffs