IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| PRECIOUS JOHNSON, *on Behalf of Herself and All Others Similarly Situated*,<br><br>    Plaintiffs,<br><br>v.<br><br>WRIGHT TRAFFIC CONTROL, INC.,<br><br>    Defendant. | Civil Action No. 2:23-cv-01500<br><br>Judge David S. Cercone<br><br>**UNOPPOSED MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT** |

Plaintiff Precious Johnson, by and through counsel, respectfully submits this Unopposed Motion for Approval of Fair Labor Standards Act Collective Action Settlement. In support of this motion, Plaintiff submits the following documents and proposed orders:

Exhibit 1:    Settlement Agreement and Release;

Exhibit 1A:    Allocation of Settlement Payments to Individual Eligible Settlement Participants

Exhibit 1B:    Notice of Settlement

Exhibit 1C:    Claims Form

Exhibit 1D:    Proposed Order Granting Plaintiff's Unopposed Motion for Approval of Settlement

Exhibit 1E:    Stipulation of Dismissal

Exhibit 2:    Declaration of Matthew S. Grimsley, Esq.

Plaintiff respectfully request that the Court enter an Order, as proposed in Exhibit 1D, approving the Settlement as fair and reasonable. Defendant does not oppose the forgoing Motion, and the requested relief is appropriate for the reasons set forth in the Brief in Support that follows.

## BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT

**I.    INTRODUCTION**

Plaintiff Precious Johnson seeks approval of the proposed Fair Labor Standards Act ("FLSA") claims based (opt-in) Settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement") attached as Exhibit 1. The Parties have agreed to settle this matter on an FLSA basis, and the proposed Settlement will resolve *bona fide* disputes involving overtime compensation claims under the FLSA 29 U.S.C. §§ 201-219 and Indiana law. If approved, the Settlement will provide for the issuance of notice to all Eligible Settlement Participants (current and former Skilled Traffic Controllers/Drivers who worked for Defendant through its Indianapolis, Indiana office during the three-year statutory period). The Eligible Settlement Participants will have 45 days to join the Settlement by executing and returning the Claim Form attached as Exhibit 1C. Because the proposed Settlement is an FLSA opt-in settlement, as opposed to a Rule 23 opt-out settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved after mediation with an experienced mediator, and extensive arms-length negotiations conducted by experienced counsel. If approved, the Settlement will make settlement payments available to the Eligible Settlement Participants who elect to participate, as well as Plaintiff and the five existing Opt-In Plaintiffs. Those Eligible Settlement Participants who do not elect to participate in the Settlement will not be included and will not release their claims.

The following sections explain the nature of the Action, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

II.    **BACKGROUND**

    A.    __The Action__

Representative Plaintiff Precious Johnson, who was formerly employed by Defendant as a traffic controller/driver out of Defendant's Indianapolis, Indiana office, initiated this Civil Action alleging that Defendant failed to pay her and other similarly situated traffic controllers/drivers wages for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 per workweek, in violation of the FLSA, 29 U.S.C. § 201, *et seq*. and the Indiana Wage Payment Act, I.C. § 22-2-5-1, *et seq*.. (ECF Nos. 1, 31.) Specifically, Plaintiff alleges that Defendant paid her and other similarly situated traffic controllers/drivers only for work performed between the time they arrived at and left their assigned worksite, and did not pay them for the following: (1) picking up co-workers from co-workers' homes and/or designated meeting locations and transporting the co-workers to the worksite prior to their scheduled shift start time; (2) transporting co-workers to the co-workers' homes and/or designated meeting locations to drop the co-workers off after their shift ended. (*See* ECF No. 31 at ¶¶ 38-45.)

Defendant denies the allegations in this Civil Action, and contends, *inter alia*, that time engaged in travel to the job site is not compensable under federal or state law, that there was no requirement to pick up/drop off work partners and that individuals' decision to do so was voluntary and not a compensable work activity, and that Representative Plaintiff and all other Eligible Settlement Participants were appropriately paid for all hours worked.

    After this case was filed, the Parties, through counsel, conferred at length regarding their respective positions on the factual and legal issues in this case. (Ex. 2 at ¶ 14.) Although the Parties dispute the merits of the claims in this case, they ultimately agreed to engage in informal

discovery relative to, and explore settlement on behalf of, Representative Plaintiff, the existing Opt-In Plaintiffs, and all other skilled traffic controllers/drivers who were employed by Defendant out of its Indianapolis, Indiana office during the three-year statutory period (hereinafter "Eligible Settlement Participants"). (*Id*.)

In addition to Representative Plaintiff, there are 5 existing Opt-In Plaintiffs (who were also employed out of the Indianapolis, Indiana office), and 190 other Eligible Settlement Participants (all of whom were employed as skilled traffic controllers/drivers out of Defendant's Indianapolis, Indiana office). (*Id*. at ¶ 16.)

**B.     Investigation, Informal Discovery, and Settlement Negotiations.**

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. (Ex. 2 at ¶¶ 17, 24, 26, 27.)

Before this action was even filed, Plaintiffs' Counsel performed a significant amount of research and factual investigation to set forth a factually specific and accurate Complaint for the Court and Defendant. Plaintiffs' Counsel also engaged in further independent investigation of the facts, and interviewed and obtained declarations from Representative Plaintiff and the five Opt-In Plaintiffs. (*Id*. at ¶ 26.)

Prior to negotiating the Settlement, the Parties engaged in a comprehensive exchange of significant information regarding Plaintiffs' claims and Defendant's defenses. Defendant produced to Plaintiffs' Counsel, *inter alia*, data and information necessary to create a damages model, including time and pay data for Representative Plaintiff, the Opt-In Plaintiffs, and all Eligible Settlement Participants. (*Id*. at ¶ 27.) Using the data provided by Defendant, Plaintiffs' Counsel prepared a complete analysis of the Representative Plaintiffs', Opt-In Plaintiffs, and Eligible Settlement Participants' wage damages. (*Id*. at ¶ 17.)

The Parties also engaged in several lengthy discussions and correspondence concerning their respective legal and factual positions, and the alleged wages damages. This included several lengthy discussions and communications between counsel for the Parties regarding the claims in this case, Defendant's anticipated defenses, time, pay, and other employment information for Plaintiff, the Opt-In Plaintiffs, and the Eligible Settlement Participants, and the calculations of Plaintiff, the Opt-In Plaintiffs, and the Eligible Settlement Participants alleged damages. (*Id.* at ¶ 28.) legal issues in this case were vehemently argued by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. (*Id.* at ¶ 30.)

On April 5, 2024, the Parties participated in mediation with Carole Katz, Esq., a reputable mediator with extensive experience in wage-hour class and collective actions. (*Id.* at ¶ 19.) During mediation, the Parties discussed, *inter alia*, the merits of this case, the computation of alleged damages, and the applicable statute of limitations. (*Id.* at ¶ 20.) At that time, the Parties were unable to reach an agreement, but agreed to keep the mediation open, continue engaging in meaningful dialogue, and continue exploring the possibility of early resolution. (*Id.* at ¶ 21.)

Thereafter, the Parties exchanged additional information and engaged in several more discussions regarding settlement. (*Id.* at ¶ 22.) After more than two months of further negotiations, the Parties were able to reach an agreement to settle this action on the terms set forth in the Agreement attached as Exhibit 1. (*Id.* at ¶ 23.)

**C.    The Settlement Terms**

If approved, the Settlement will cover Representative Plaintiff, Opt-In Plaintiffs, and all the Eligible Settlement Participants who elect to participate in (opt-in to) the Settlement by signing and returning the Claim Form. (*Id.* at ¶ 35.) The Maximum Gross Settlement Amount is $346,250.00, which sum will cover: (a) all individual payments to the Plaintiffs and the Eligible

Settlement Participants who elect to participate; (b) a service payment to Representative Plaintiff; and (c) Plaintiffs' Counsel's attorneys' fees and expenses. (Ex. 1 at ¶ 1.22.)

$225,181.33 of the Gross Settlement Amount is the "Class Settlement Amount", which is the portion of the Gross Settlement Amount that is divided into individual payments to the existing Plaintiffs and all Eligible Settlement Participants for their alleged wage damages. (*Id*. at ¶ 1.22a.) The individual payments from the Class Settlement Amount are calculated proportionally on each Plaintiff and Eligible Settlement Participant's alleged overtime damages between three years prior to the commencement of this action and February 18, 2024. (*Id*. at ¶ 1.6; Ex. 2 at ¶ 38.) Additionally, the Settlement provides for a minimum payment allocation of $25.00 for any Plaintiff or Eligible Settlement Participant that is owed less than $25.00. (Ex. 1 at ¶ 1.22a; Ex. 2 at ¶ 38.) The individual payments have been calculated by Plaintiffs' Counsel and approved by Defendant's Counsel, and can be found at Exhibit A to the Settlement Agreement. All Plaintiffs, and all Eligible Settlement Participants who opt-in by timely submitting a properly completed Claim Forms ("the Final Settlement Class"), will receive their respective individual payment as allocated from the Class Settlement Amount and set forth in Exhibit A to the Settlement Agreement. (Ex. 1 at ¶¶ 1.17a; 3.10).

$4,000.00 of the Gross Settlement Amount will be paid to Precious Johnson (the "Service Payment Allocation") for her services as the Representative Plaintiff in this case and in exchange for a general release. (Ex. 1 at ¶ 1.22b; 4.2a-b.)

Additionally, $115,416.67 (one-third) of the Gross Settlement Amount will be paid to Plaintiffs' Counsel for attorneys' fees ("Attorneys' Fees Payment") and $1,652.00 for expenses incurred in this matter (Attorneys' Expense Payment"). (*Id*. at ¶¶ 1.22c-d)

The Settlement will be administered by Simpluris in the manner described in Section 3 of

the Settlement Agreement. The costs associated with settlement administration are not included in, and will not be deducted from, the Maximum Gross Settlement Amount. Instead, as part of the Settlement, Defendant will separately pay, and be fully responsible for, all costs associated with the settlement administration. (*Id.* at ¶ 1.22.)  The Settlement Administrator will mail the Notice (Exhibit 1B) and Claim Form (Exhibit 1C) to the Eligible Settlement Participants.  The Eligible Settlement Participants who opt-in to the settlement—by timely submitting properly completed Claim Forms—will become "Final Settlement Class Members" and will be issued their individual settlement payment, and will release all claims, demands, and causes of action for unpaid wages, liquidated damages, interest, attorneys' fees, and expenses, and any other relief available under any state, federal or local laws governing wages or the payment of wages. (Ex. 1 at ¶ 1.20; Ex. 1C). Any Eligible Settlement Participant who does not opt-in to the Settlement will not be entitled to payment of their portion of the "Class Settlement Amount" (which sums shall remain the property of Defendant) and shall not be subject to any release of claims.

## III.    THE SETTLEMENT SHOULD BE APPROVED.

The Parties' have agreed to settle this matter on an FLSA basis pursuant to Section 216(b) of the FLSA. "When parties present to the district court a proposed [FLSA] settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007, 2019 WL 5394751, *1 (W.D. Pa. Oct. 22, 2019) (quoting *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012); *see also In re Chickie's & Pete's Wage & Hour Litig.*, No. 12–6820, 2014 WL 911718, *2 (E.D. Pa. Mar. 7, 2014).

Because the proposed Settlement is an FLSA settlement for employees who affirmative opt-in (by submitting the Claim form) after receiving notice—as opposed to a Rule 23 opt-out settlement that would bind absent class members—no fairness hearing is requested by the Parties, "[n]or is the Court required to hold one." *Batista v. Tremont Enterprises*, No. 1:19CV361, 2019 WL 3306315, *1, n. 1 (N.D. Ohio July 22, 2019); *see also, Moore v. Ackerman Inv. Co*., C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *Barnes v. Benzerenterprises, Inc*., 607-cv-1754, 2008 WL 4059839 (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing"). Instead, "[a] one-step settlement approval process is appropriate", as FLSA settlements under Section 216(b) do not implicate the same due process concerns as do Rule 23 actions." *Koszyk v. Country Financial a/k/a CC Services, Inc.,* No. 16 Civ. 3571, 2016 WL 5109196, *1 (N.D. Ill. Sept. 16, 2016); *see also*, *Owens v. Interstate Safety Serv., Inc.*, No. 3:17-CV-0017, 2017 WL 5593295, at *1 (M.D. Pa. Nov. 21, 2017) (approving FLSA settlement reached before conditional certification on behalf of potential opt-ins to whom notice of the settlement would be issued); *Prena v. BMO Fin. Corp.*, No. 14-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (noting that two-step process was unnecessary in the FLSA collective action context, stating: "[o]ne step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision). Notably, while Courts in the Third Circuit have traditionally reviewed FLSA settlement agreements for fairness, this Court (and others) has also held that "judicial approval is not [even] required for settlement of a bona fide wage-and-hour dispute under

the FLSA, for both a single-plaintiff agreement and a collective agreement", and that "judicial approval is also not required for the award of attorneys' fees as part of that agreement." *Walker v. Marathon Petroleum Corp*, 684 F.Supp.3d 408, 410 (W.D. Pa. 2023); *see also Alcantara v. Duran Landscaping, Inc.*, No. 21-3947, 2022 WL 2703610, at *1 (E.D. Pa. July 12, 2022); *Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 638 (W.D. Ky. 2022). Nonetheless, the Agreement in this case is subject to approval by the Court, and thus, as a condition of the Settlement, Plaintiff requests that the Court follow the traditional approach and enter the Approval Order attached as Exhibit 1D.

In reviewing proposed FLSA settlements, Courts in the Third Circuit have referred to the considerations set forth in *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982), and "should approve a proposed settlement between the parties if it is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Gaffney v. Xolo Tacos 2, Inc.*, No. 19-711, 2020 WL 1640091, *2 (E.D. Pa. April 2, 2020) (quoting *Lynn's,* 679 F.2d at 1355). There are three main factors to consider: (a) whether the settlement concerns a bona fide dispute; (b) whether the settlement is fair and reasonable; and (c) whether settlement does not frustrate the implementation of the FLSA. *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-4580, 2019 WL 1785453, *2 (E.D. Pa. April 24, 2019). "The Third Circuit has instructed that when analyzing these factors, a court must be mindful of the strong public policy in favor of settlements." *Id*. (citing *Farris v. JC Penny Co., Inc.*, 176 F.3d 706, 711 (3d Cir. 1999)). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman*, 2019 WL 1785453, *2 (citing *Lynn's*, 679 F.2d at 1353-54).

As discussed herein, the proposed settlement resolves a *bona fide* dispute, is fair and reasonable, and advances (and certainly does not frustrate) the purpose of the FLSA.

8

### A.    A *Bona Fide* Dispute Exists.

"A proposed settlement agreement resolves a bona fide dispute if it 'reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, *2 (E.D. Pa. June 4, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354). Here, a *bona fide* dispute certainly exists between the Parties. In fact, there are several issues in dispute—the outcome of which remains uncertain—that could significantly impact this case if it were further litigated. (Ex. 2 at ¶¶ 31, 32.) The Parties dispute a number of issues in this case, including, *inter alia*: whether the alleged unpaid work (i.e., drive time between pick-up/drop-off location and the worksite) was a compensable activity under the FLSA, or whether picking up/dropping off co-workers was dispensable; whether the alleged unpaid work time was *de minimis*; the amount of time Plaintiffs and the Eligible Settlement Participants spent performing the alleged unpaid work, and thus, the computation of back wages they are allegedly owed; and whether this case is suitable for collective treatment under the FLSA. (*Id*. at ¶ 31.) Moreover, while Defendant contends that Plaintiffs could not succeed on the merits, even if they could, the Parties also dispute whether Defendant has a good faith defense that would preclude an award of liquidated damages, and whether Defendant's conduct was willful to trigger the three-year statute of limitations instead of the two-year statute of limitations that otherwise applies to the claims in this case. (*Id*.) Thus, a *bona fide* dispute certainly exists.

### B.    The Settlement is Fair and Reasonable to Plaintiffs.

In determining whether a settlement is fair and reasonable, courts in the Third Circuit consider the factors identified in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Fritz v. Terminite, Inc.*, No. CV 19-15749, 2020 WL 5015508, *2 (D.N.J. Aug. 25, 2020). An analysis of these factors demonstrates that Court approval is warranted on all scores.

### 1. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force in this case. "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y.2013)). This case is certainly no exception. As discussed in section II, *supra*, several factual and legal issues are in dispute in this case. If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted litigation. (*Id*. at ¶ 51.) The Parties would be required to engage in extensive formal discovery, which would be expensive and time-consuming given the continued factual and legal disputes between the Parties. (*Id*.) The Parties would also be required to engage in extensive briefing regarding conditional certification, decertification, and dispositive motions. (*Id*.) A case schedule has yet to even be set in this matter (which was stayed at the pleading stages), and it would likely take years before this case would be ripe for trial. Moreover, if this case ultimately went to trial, the trial would be complex and factually intensive with respect to both liability and damages, and any final judgment would likely be appealed. (*Id*.) Accordingly, this factor favors approval.

**2.    The reaction of the class to the settlement favors approval.**

There are no objections to the Settlement. Unlike a Rule 23 settlement that binds absent class members, the Final Settlement Class Members in this case are those who affirmatively consent to be bound. Indeed, the existing Opt-In Plaintiffs designated Representative Plaintiff as their agent, and already consented to be bound any settlement of this action when they filed their Consent Forms (*See* ECF No. 5). The Eligible Settlement Participant will likewise have the option of participating in this matter or not after receiving notice of the Settlement and the amount of their individual allocation. The Eligible Settlement Participants are not bound by the Settlement unless they affirmatively opt-in by completing and submitting the Claim Form. As such, any members who choose not to participate are free to do so without taking any action on their part. Thus, this factor further supports granting approval.

**3.    The stage of the proceedings and amount of discovery completed favors approval.**

The third factor likewise favors approval, as the settlement resulted from informed negotiations between experienced counsel who fully appreciated the merits and risks of this case. (*See* Ex. 2 at ¶¶ 25, 30, 34, 54.) Prior to negotiating the settlement, the Parties engaged in substantial investigation and informal discovery. (*Id*. at ¶¶ 25-28.) This included a comprehensive exchange of information, including all the necessary time/pay records for Plaintiffs and the Eligible Settlement Participants, which Plaintiffs' counsel fully analyzed and used to prepare calculations and a complete analysis of Plaintiffs and the Eligible Settlement Participants' damages. (*Id.* at ¶¶ 17, 27.) While formal discovery has yet to commence, "[b]y avoiding formal discovery, resources that otherwise would have been consumed by the litigation were made available for settlement, and the risk and uncertainties for both parties were reduced." *Duprey v. Scotts Co.*, 30 F.Supp.3d 404, 408 (D. Md. 2014). Moreover, the legal issues in the case were

thoroughly researched and argued by competent counsel with extensive experience litigating wage and hour collective actions. (*See* Ex. 2.)  The parties counsel engaged in extensive arms-length settlement negotiations, including during and after mediation with a reputable mediator with extensive experience in wage-hour class and collective actions. (*Id*. at ¶¶ 14, 17-23, 28-29.) *See, e.g.*, *Fein v. Ditech Fin., LLC*, No. 16-00660, 2017 WL 4284116, at *9 (E.D. Pa. Sept. 27, 2017) (concluding that counsel appreciated the merits of the case because, among other things, the parties "engaged in various arm's-length negotiations, including a full-day mediation session"). All aspects of the dispute are well-understood. (*Id*. at ¶ 30.) Thus, this factor also favors approval.

### 4.    The risk of establishing liability favors approval.

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law and Plaintiffs' success at trial is far from guaranteed. (*see* Ex. 2 at ¶ 30-32, 43, 49-52, 54.) Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. (*Id*. at ¶ 54.) Continued litigation would be risky for all and at each stage, including conditional certification, decertification, summary judgment, and trial. (*Id*. at ¶¶ 52, 54) Accordingly, this factor also weighs in favor of approval.

### 5.    The risk of establishing damages favors approval.

The risk of establishing damages likewise favors approval. (*See* Ex. 2 at ¶ 43.) For example, if the Court or jury determined that the alleged unpaid work time was *de minimis* or otherwise not compensable, there would be no recovery. (*Id*.) Moreover, even if Plaintiffs were to succeed on the merits, the Court or a jury could find that Defendant did not act willfully, and thus a two-year

statute of limitations would apply, which would cause certain individuals to be dismissed (as their damages are not within the two-year statute of limitations), and would lessen the damages of those whose employment includes time within the three-year statute of limitations. (*Id*.) Further, even if Plaintiff succeeded on the merits and the three-year statute of limitations applied, the Court or a jury could find that Plaintiffs and the Eligible Settlement Participants spent less time performing the alleged work than that which was recovered in this Settlement. (*Id*.) If, for example, a jury found that Plaintiffs worked only 12 additional minutes per shift, then the total wage damages would be less than half of the net recovery that the Class is receiving under the Settlement. (*Id*.) In short, all of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id*.) Continued litigation would only serve to increase the attorneys' fees and expenses in this matter, without any certainty that the Plaintiffs would obtain a higher verdict, or any verdict in their favor. Thus, this factor also weighs in favor of approval.

### 6. The risk of maintaining the collective through trial favors approval.

Defendant has vigorously argued that this case is not appropriate for collective treatment, and had this case not settled, the Parties would have had to engage in extensive briefing on the issue of certification, decertification, and summary judgment, the outcome of which would have been uncertain. Accordingly, this factor also favors approval.

### 7. Defendant's ability to withstand a greater judgment.

Whether Defendant is able to withstand a greater judgment "does not carry much weight in determining whether to approve an otherwise fair and reasonable settlement." *Kyem v. Merakey USA*, No. 2:19-cv-05577, 2022 WL 425584, *4 (E.D. Pa. Feb, 11, 2022). Moreover, in light of the risks associated with further litigation, as well as the other factors favoring approval, this factor certainly does not weigh against settlement approval. *See Lazy Oil Co. v. Wotco Corp*., 95 F. Supp.

3d 290, 318 (W.D. Pa. 1997) ("The Court presumes that Defendants have the financial resources to pay a larger judgment. However, in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial, the Court accords this factor little weight in deciding whether to approve the proposed Settlement.").

> **8.      The range of reasonableness of the settlement fund in light of the best possible recovery.**

Plaintiffs' range of possible recovery is open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. (Ex. 2 at ¶ 31.) Indeed, Defendant believes that the time allegedly spent performing the alleged unpaid work is *de minimis* and otherwise not compensable. Nonetheless, the Gross Settlement Amount ($346,250.00) equals approximately 131.03% percent of Plaintiffs and the Eligible Settlement Participants' actual wage damages assuming they each worked an additional 30 minutes per shift and the three-year (as opposed to two-year) statute of limitations applies. (*Id.* at ¶¶ 40, 41). Moreover, even after deducting the Attorneys' Fees Payment, Attorneys' Expense Payment, and the Service Payment to Representative Plaintiff, the net recovery for Plaintiffs and the Eligible Settlement Participants equals approximately 85.21% of their wage damages (85.01% of the wage damages after also deducting the $25.00 minimum payments) assuming they each worked an additional 30 minutes per shift (which Defendant disputes) and the three-year statute of limitations applies (which Defendant disputes). (*Id.* at ¶ 42).

Simply put, while the range of possible recovery is in dispute, the Settlement provides for substantial relief promptly and efficiently. Thus, this factor also favors approval.

> **9.      The range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation.**

The settlement is certainly reasonable in light of the all the attendant risks of further

litigation. Indeed, settling this matter now avoids the risk of, *inter alia*, decertification, dismissal on summary judgment, an unfavorable jury verdict, and/or an unfavorable decision on appeal. If, the Court were to find that the alleged pre/post-shift work was dispensable and therefore not compensable (as Defendant contends), then the case could be dismissed on summary judgment. If the Court or jury found that the alleged time spent performing the alleged pre/post-shift work were *di minimis* (as Defendant contends), the Plaintiffs would recover nothing. If the Court or jury found that Defendant's violations were not willful, then Plaintiffs recovery will be limited to the two-year statute of limitations period and several Plaintiffs (who did not work for Defendant within the two-year period) would receive nothing. Moreover, even if the jury were to find in favor of Plaintiffs, the recovery awarded could certainly be far less than what Plaintiffs and the Eligible Settlement Participants are receiving under the Settlement. Accordingly, the attendant risks associated with holding out for a recovery at trial further demonstrate that the settlement should be approved. With that, all relevant factors demonstrate that the Settlement is fair and reasonable.

IV.    **THE AGREED UPON PAYMENT OF ATTORNEYS' FEES AND EXPENSE REIMBURSEMENTS TO PLAINTIFFS' COUNSEL SHOULD BE APPROVED.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). "Courts determine attorney's fees under either the lodestar method or the percentage of

recovery method." *Goncalves v. AJC Construction Inc*., No. 21-CV-4631, 2022 WL 2985636, *3 (E.D. Pa. July 28, 2022) (quoting *Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, *3 (E.D. Pa. 2015). However, "[t]he percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Id.* In determining the reasonableness of attorneys' fees awards, the Court has traditionally considered seven factors identified by the Third Circuit:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir.2000) (citations omitted). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Mulroy v. National Water Main Cleaning Co*., No. 12–3669, 2014 WL 7051778, *7 (D. N.J. Dec. 12, 2014) (citing *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 301 (3d Cir. 2005).

Here, the requested payment to Plaintiffs' Counsel for attorneys' fees—which equal one-third of the settlement fund—is certainly reasonable and should be approved.

In common fund settlements of wage and hour cases, Courts in this circuit and elsewhere routinely award plaintiffs' counsel **one-third or more** of the total settlement amount for attorneys' fees. *See, e.g., Robertson v. Enbridge (U.S.) Inc*., No. 2:19-cv-1080, 2021 WL 8342845, *2 (Dec. 17, 2021) (approving Counsel's request for an award an award of attorneys' fees in the amount of 35% percent of the maximum settlement amount, in addition to authorizing the reimbursement of $40,000.00 to Class Counsel for litigation costs); *Ceuric v. Tier One, LLC,* No. 2:17-cv-01240, 2019 WL 7493636, *2 (W.D. Pa. Feb. 11, 2019) ("The Court hereby grants and approves Class Counsel's request for an award of attorneys' fees in the amount of thirty-three and one-third percent of the Maximum Settlement Amount. This award of fees, made on the basis of a percentage of the

fund, is consistent with the standard in this Circuit."); *Seagraves v. Range Res. Corp.*, 2:17-cv-1009-JFC (W.D. Pa. Oct. 16, 2018) (ECF No. 40) (approving payment for attorneys' fees to plaintiffs' counsel equal to 33.3% of total settlement amount); *Bristow v. Caritas*, No. 22-CV-235, 2023 U.S. Dist. LEXIS 92193, *2-3 (E.D. Pa. May 25, 2023) (approving payment for  fees to plaintiffs' counsel constituting 33.33% of an FLSA settlement); *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369 (W.D. Pa. 2002) (approving attorneys' fees payment to plaintiffs' counsel equal to 38% of $350,000 total settlement amount); *Goncalves v. AJC Construction Inc*., No. 21-CV-4631, 2022 WL 2985636, *3 (E.D. Pa. July 28, 2022) (fee of "slightly less than 36 percent of the total recovery ... is a reasonable amount in FLSA cases"); *Gravely v. PetroChoice LLC.*, No. 19-CV-5409, 2022 U.S. Dist. LEXIS 113746, at *5 (E.D. Pa. June 28, 2022) (35% fee "in line with fee awards by courts in the Third Circuit"); *Williams v. Sweet Home Healthcare, LLC*, No. 16-2353, 2018 WL 5885453 (E.D. Pa. Nov. 9, 2018) (approving payment of attorneys' fees to plaintiff's counsel equal to one-third of total settlement fund of $1,625,000, noting that "Counsel requests a percentage of recovery that falls in the middle of a spectrum approved by courts in this Circuit."); *Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018) (approving payment of attorneys' fees to Plaintiff's counsel equal to 33.3% of total settlement amount);  *Lyons v. Gerhard's Inc*., No. 14-06693, 2015 WL 4378514, *5 (E.D. Pa. July 16, 2015) (approving payment of attorneys' fees to plaintiffs' counsel that represented "39% of the total settlement" as well as reimbursement of costs); *Leap v. Yoshida*, No. 14–3650, 2015 WL 619908, *4 (E.D. Pa. Feb. 12, 2015) (approving payment of attorney's fees to plaintiffs' counsel that constituted one-third of total settlement fund, in addition to reimbursement of expenses); *Lupian v. Joseph Cory Holdings*, No. 16-CV-5172, 2019 WL 3283044, at *6 (D. N.J. July 22, 2019) (approving payment to plaintiff's counsel of

"approximately one third of the settlement amount" for attorneys' fees in wage and hour class action, and stating: "that fee is based on a one-third percentage of recovery and is consistent with counsel's contingency arrangement with the named plaintiffs. Such percentage awards are consistent with fees in this District in contingency cases."); *Mulroy v. National Water Main Cleaning Co*., No. 12–3669, 2014 WL 7051778, *6-*7 (D. N.J. Dec. 12, 2014) (awarding 40% of total settlement amount to plaintiff's counsel for fees and expenses).[1]

Moreover, the attorneys' fees requested are certainly reasonable in light of the size of the fund, the number of Plaintiffs and Eligible Settlement Participants who will be benefited by the fund, and the substantial benefit achieved for the Plaintiffs and the Eligible Settlement Participants. There are 196 current and former employees who benefit from the Settlement (Representative Plaintiff, the 5 existing Opt-In Plaintiffs, and the 190 Eligible Settlement Participants), and the Gross Settlement Amount ($346,250.00) equals approximately **131.03% percent** of their wage damages, and that is assuming they each worked an additional 30 minutes per shift and the three-

---

[1] *See also, Bleich v. Cleveland Brewing Company, LLC*, No. 1:21-cv-01891, 2022 WL 2185024, *2 (N.D. Ohio May 16, 2022) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund."); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3, 7, 8 (N.D. Ohio, June 15, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions in this judicial district."); *Dillworth v. Case Farms Processing, Inc*., No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio March 8, 2010) (approving attorneys' fees payment of one-third of total settlement amount for, in addition to payment for litigation costs); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (stating that one-third of the total settlement "is a normal fee amount in a wage and hour case."); *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding plaintiffs' counsel 52 percent of maximum settlement fund for attorneys' fees in wage and hour case); *Brittmon v. Upreach LLC*, No. 2:17-cv-219, 2018 WL 7889855 (S.D. Ohio Nov. 8, 2018) (awarding plaintiffs' counsel 40% of total settlement amount for attorney fees plus costs); *Bessey v. Hunter v. CC Gaming, LLC*, No. 19-cv-01979, 2020 WL 13444208 (D. Colo. Dec. 16, 2020) ("In situations such as this, where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."); *Henry v. Little Mint, Inc*., No. 12 Civ. 3996, 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014) (courts have routinely "awarded one-third or more of the settlement fund as attorneys' fees in wage and hour settlements").

year (as opposed to two-year) statute of limitations applies. (Ex. 2 at ¶¶ 41, 53). And again, **even after** deducting the Attorneys' Fees Payment, Attorneys' Expense Payment, and the Service Payment to Representative Plaintiff, the **_net_** recovery for Plaintiffs and the Eligible Settlement Participants equals approximately 85.21% of their wage damages assuming they each worked an additional 30 minutes per shift (which Defendant disputes) and the three-year statute of limitations applies (which Defendant disputes). (*Id.* at ¶ 42). Towards that end, the Settlement in this case "greatly exceeds the typical 7-11% recovery in FLSA cases." *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, *3 (E.D. Mich. May 31, 2022); (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, *8 (N.D. Ohio Mar. 8, 2010) (citing Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995). In *Dillworth*, the Court concluded that a recovery of one-third of the wages allegedly owed, **_before_** deducting attorneys' fees and costs, was "exceptional". *Dillworth*, 2010 WL 776933, at *8. Measured against this standard, the Settlement in this case is certainly an excellent result for the Plaintiffs and Eligible Settlement Participants.

Moreover, the skills and experience of Plaintiffs' Counsel, as explained in the Declaration attached hereto (*see* Ex. 2), undoubtedly support the requested Attorneys' Fees Payment in this case. Many attorneys likely would not have understood the nuanced legal issues in this case or been able to discern whether Plaintiffs and the Eligible Settlement Participants even have viable claims. The excellent results achieved for the Plaintiffs and Eligible Settlement Participants reflect the substantial skills and experience they have with litigating collective and class actions.

Further, the complexity of this litigation certainly favors approval of the requested fees. Again, "[w]age-and-hour collective and class actions are, by their very nature, complicated and

time-consuming." *Swigart v. Fifth Third Bank*, 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (citing *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 479-80 (S.D.N.Y.2013)). Moreover, the attorneys' fees in this case were entirely contingent upon the success of this litigation, and should not be altered because counsel efficiently resolved it rather than further prolonging the litigation and increasing the potential fees. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007, 2019 WL 5394751, *9 (W.D. Pa. Oct. 22, 2019) ("Counsel 'undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation.' *Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018). To the contrary, the early settlement of potentially costly litigation is commendable. Considerable judicial time and resources were no doubt conserved by the parties' resolution of this case before dispositive motions or trial."); Manual for Complex Litigation (4th) § 14.121 ("one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."). Plaintiffs' Counsel undertook representation under a one-third contingent-fee basis, and expended significant time and effort and advanced costs, without any guarantee of compensation. (Ex. 2 at ¶¶ 49, 50.)

Towards that end, the risk of non-payment strongly supports the amount requested here. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of the success they achieved in reaching the settlement. (*Id*. at ¶¶ 50, 51, 52, 54.) Again, *bona fide* disputes exist between the Parties, the outcome of which remains uncertain. (*Id.* at ¶¶ 30, 31, 54.) For example, if the Court and/or jury determined that the alleged unpaid time was *de minimis* or not compensable, Plaintiffs and the Eligible Settlement Participants would be entitled to no recovery. If the Court denied certification, the 190 Eligible Settlement Participants would

obtain no recovery. Moreover, even if Plaintiffs' prevailed on certification and summary judgment, and proved their claims at trial, if the Court or jury determined that Defendant's violations were not willful, then only the two-year statute of limitations would apply. Further, even if Plaintiff succeeded on the merits and the three-year statute of limitations applied, the Court or a jury could find that Plaintiffs and the Eligible Settlement Participants spent less time performing the alleged work than that which was recovered in this Settlement. (*Id*. at ¶ 43.) Thus, the risk of non-payment or a significantly reduced payment strongly supports the Attorneys' Fees Payment.

Furthermore, the expense and likely duration of continued litigation also favor approval. Wage and hour cases for groups of employees are always expensive and time-consuming. Indeed, if forced to litigate this case further, the Parties would certainly engage in costly and protracted wrangling. (*Id*. at ¶ 52.) The Parties would be required to engage in extensive formal discovery and briefing on certification, decertification, and summary judgment, and if this case ultimately went to trial, the trial would be complex and factually intensive with respect to both liability and damages, and any final judgment would likely be appealed. (*Id*.)

Additionally, Plaintiffs' Counsel's request for one-third of the gross settlement amount for attorneys' fees (plus reimbursement for expenses), has been approved in numerous similar FLSA collective and class actions.[2]

---

[2] *See, e.g., English v. Mann+Hummel*, Case No. 1:22-cv-00881 (E.D. Mich.); *Bleich v. Cleveland Brewing Company*, Case No. 1:21-cv-01891-JG (N.D. Ohio); *Etheridge v. Vita-Mix*, Case No. 1:21-cv-0179 (N.D. Ohio); *Viconovic v. Vallourec Star*, Case No. 1:20-cv-1591 (N.D. Ohio); *Klaus v. Humana Pharmacy, Inc.*, Case No. 1:19-cv-01025 (S.D.); *Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Johnson v. New York Life Insurance Co*., Case No. 1:19-cv-01898 (N.D. Ohio); *Shumate v. Genesco, Inc.*, et al, Case No. 1:17-cv-03574 (S.D. Ind.); *Grayer, et al. v. Kennametal, Inc.*, Case No. 1:16-cv-01382 (N.D. Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home Helper*, Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc*., Case No. 3:17-cv-00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc.,* Case No. 1:16-cv-1281 (N.D. Ohio); *Castro v. Heart Home Care, LLC*, Case

Lastly, the Expense Payment to Plaintiffs' Counsel is also reasonable and should be approved. Plaintiffs' Counsel has incurred expenses in the amount of $1,652.00, which includes $402.00 for the filing fee; $105 for Service of the Complaint and Summons, $70 (50% of the cost) in connection with two *pro hac vice* applications; $575.00 for public records searches; and $500.00 for miscellaneous litigation expenses. (*Id*. at ¶ 57.) All expenses were incurred during the course of the litigation of this Action. (*Id*.)

## V.    THE SERVICE AWARD TO REPRESENTATIVE PLAINTIFF IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Court should also approve the requested $4,000 Service Payment Allocation to Precious Johnson for her services as Representative Plaintiff in this case. Service payments (also referred to as enhancement awards or representative payments) are routinely given to representative plaintiffs for their efforts in bringing and prosecuting the case. *See Myers v. Jani-King of Philadelphia, Inc*., No. 09-1738, 2019 WL 4034736 (E.D. Pa. Aug. 26, 2019); *Cullen v.*

---

No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv-00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Tx.); *Swiger, et al. v. Utz Quality Foods, Inc*., Case No. 1:15-cv-2196 (M.D. Pa.); *Houston, et. al. v. Progressive Casualty Insurance Co*., Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC, et al*., Case No. 2:15-cv-1307 (W.D. Pa.); *Rucker v. Quality Blow Molding,* Case No. 1:15-cv-1039 (N.D. Ohio); *Green v. H.A.D., Inc.,* Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc.,* Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams v. Beckett Air, Inc*., Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP*, et al, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No. 5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).

*Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). "Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts." *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010).

Here, Representative Plaintiff provided substantial and effective services in this case. (Ex. 2 at ¶ 46). She, *inter alia*: agreed to bring this action in her name; provided extensive and critical factual information, including information that assisted Plaintiffs' Counsel in formulating the claims in this case and preparing a detailed, factually specific Complaint; faithfully engaged in several and extensive communications with Plaintiffs' Counsel throughout the course of this litigation; was actively involved in the settlement process; appeared at mediation; and provided information that assisted Plaintiffs' Counsel in negotiating the Settlement that was reached. (*Id.*)

Moreover, Representative Plaintiff has risked her employment reputation by subjecting herself to the responsibilities of serving as the named Plaintiff in this lawsuit against her former employer. (*Id.* at ¶ 47.) *See Mejia v. KVK-Tech, Inc.*, No. 2:19-cv-4841, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken"); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, *5 (S.D. Ohio Nov. 25, 2019) (noting that "It is important to compensate the work and additional risk that a class representative takes on, particularly in a wage and hour lawsuit", and stating: "[a] worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real."); *Edelen v. Am. Residential Servs.*, LLC, No. Civ. A. 11-2744, 2013 WL 3816986, *16 (D. Md. July

22, 2013) (approving incentive payment noting that: "although there is no indication that Mr. Edelen faces any specific challenges in his current or future job prospects as a result of his participation in this lawsuit, there clearly is a risk that he could."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 WL 532960, *1.

Further, in exchange for the Service Award Payment, Representative Plaintiff will be bound by a general release of his claims. *See Yorba v. Barrington School, LLC*, No. 2:21-cv-691, 2022 WL 2436952, *6 (S.D. Ohio July 5, 2022); *Edelen*, 2013 WL 3816986, at *16.

Additionally, the requested Service Award ($4,000.00) is well within the range that Courts in this circuit and elsewhere routinely approve in similar wage and hour cases. *See, e.g., Mejia*, 2020 WL 5292074, *3 (approving $5,000 service award to each named plaintiff and stating "Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken", and "a service award of $5,000 is in line with similar awards approved in other collective/class actions in this district."); *Myers*, 2019 WL 4034736, *10 (approving service award of $10,000 to each Named Plaintiff stating that "[i]n addition to the Named Plaintiffs' active involvement in the litigation, they also risked their employment reputation by participating in this class action."); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, *1 (S.D.N.Y. Dec. 2, 2014) (approving award of

$10,000 to FLSA class representative); *Dillworth v. Case Farms Processing, Inc.,* No. 5:08-cv-1694, 2010 WL 776933, *7 (N.D. Ohio Mar.8, 2010) (approving service award of $6,000 to one named Plaintiff and $4,000 to the other named plaintiff).

## VI.    CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that the Court enter an Order, as proposed in Exhibit 1D, approving the Settlement. Defendant does not oppose this Motion.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (OH 0092942)
(*Admitted Pro Hac Vice*)
Anthony J. Lazzaro (OH 0077962)
(*Admitted Pro Hac Vice*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 2, 2024, a true copy of the foregoing was filed electronically and served upon all parties via the Court's CM/ECF electronic filing system. Parties may access the filing through the Court's system.

/s/ Matthew S. Grimsley
Matthew S. Grimsley (Ohio 0092942)

Attorney for Plaintiff